877 F.2d 61
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul KIRK, a/k/a Kip, a/k/a Mr. Hollywood, Defendant-Appellant.
 No. 88-5095.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1989.
Decided June 2, 1989.
 
 Brian Knox Miller (Brian Knox Miller, P.C., on brief) for appellant.
 Gurney Wingate Grant, II, Assistant United States Attorney (Henry E. Hudson, United States Attorney, on brief), for appellee.
 Before WIDENER and SPROUSE, Circuit Judges, and KAREN LECRAFT HENDERSON, United States District Judge, District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Paul Leslie Kirk was convicted of wire fraud on May 13, 1988 for transactions with Sandra Jean Mortimer. He appeals, challenging the sufficiency of the evidence regarding a particular transaction, the district court's denial of a discovery motion, the district court's denial of his motion to dismiss the indictment on speedy trial grounds, and the exercise of the district court's discretion in allowing cross examination as to Kirk's relationship with women other than Mortimer, as violating Federal Rule of Evidence 404(b). We affirm.
 
 
 2
 Kirk, while a federal prisoner in Virginia for bank robbery, placed an advertisement for a pen pal in Contact magazine. Responding to his advertisement, Sandra Mortimer, a resident of California, wrote him a letter. Soon a relationship developed which included letters, phone conversations, and two visits. Eventually, Kirk expressed his love for Miss Mortimer. On December 24, 1985, in a call, Kirk told Miss Mortimer that a judge had set a bond of $25,000 that, if paid, would mean his release. Kirk asked Miss Mortimer if she could pay the $2,500 required to meet the bond. He also said that if released he would come to California to help her. Miss Mortimer was hesitant about sending the money. On December 27, 1985, Kirk sent a letter to Miss Mortimer, suggesting that she send postal money orders so as to clear his account in time for the bond. On January 24, 1986, Kirk sent another letter to Miss Mortimer in which he attempted to dissuade her fears that something was "fishy" about his request and again emphasized his love for her. And finally, on January 24, 1986, during a phone call, Kirk insisted that Miss Mortimer send the money, claiming it was the only way for him to be released. On January 27, 1986, Miss Mortimer sent Kirk the money. After a short note informing Miss Mortimer that Kirk had received the money, Miss Mortimer never again heard from Kirk. There was never a $2,500 bond set that would have allowed Kirk's release.
 
 
 3
 During Kirk's relationship with Miss Mortimer, Kirk had a relationship that he characterized to the parole board as a common law marriage with a Miss Mona E. Maginen. Kirk also pursued a relationship with a Miss Lynn Cornelius, whom he characterized to the parole board as his fiancee. Kirk met Miss Cornelius through the same advertisement through which he met Miss Mortimer. Kirk convinced Miss Cornelius to send him money apparently by claiming that his life was in danger if he did not pay off a loan that he owed.
 
 
 4
 Kirk was released from prison on parole in March of 1986 and violated his parole shortly after his release. He was arrested in July of 1986 for violating his parole. On February 16, 1988, Kirk was indicted for his dealings with Miss Mortimer. He was arraigned on March 14, 1988 and tried and convicted on May 13, 1988.
 
 
 5
 Before trial, Kirk's counsel requested Miss Mortimer's immigration and naturalization record in a discovery motion. The prosecution, responding to Kirk's motion, denied having any of Mortimer's immigration records and denied any knowledge of their existence. The district court denied Kirk's motion for discovery. At trial, Kirk's counsel was allowed to pursue Miss Mortimer's immigration status on cross examination.
 
 
 6
 Kirk challenges the sufficiency of the evidence establishing wire fraud with respect to the January 24, 1986 call to Miss Mortimer. 18 U.S.C. Sec. 1343 makes it criminal "to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" over wire communications in interstate commerce. Kirk's argument is that the government could not prove the contents of the January 24th call beyond a reasonable doubt since the prison system could not locate a recording of the call. Miss Mortimer, the other party to the call, testified that Kirk insisted, during the January 24th call, that she send the money because he claimed to need it by the end of the month to meet a bond set for his release. She further testified that, when she asked if there was any other way for him to be released because she could not afford to send him the money, he responded that there was no other way. The jury also heard testimony from Mary Kay Hatton, a deputy clerk of court, that there was never a bond set that would allow Kirk to be released. When a conviction is challenged on the sufficiency of evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Hamling v. United States, 418 U.S. 87, 124 (1974). Although, the recording of the call was not located, Miss Mortimer's testimony is sufficient evidence as to the content of the January 24th call to support Kirk's conviction.
 
 
 7
 Kirk next challenges the district court's denial of his discovery motion for subpoena duces tecum concerning Miss Mortimer's naturalization records. Kirk argues that such information was relevant both to show Miss Mortimer's motive in pursuing their relationship and to discredit her. Fed.R.Crim.P. 16(a)(1)(C) requires that, to be discoverable, material must be "within the possession, custody or control of the government."
 
 
 8
 Fed.R.Crim.P. 16(a)(1)(C), however, requires a showing that the documents sought are "material to the preparation of the defendant's defense." A showing of materiality must include "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." United States v. Ross, 511 F.2d 757, 762-63 (5th Cir.1975), cert denied, 423 U.S. 836 (1975). Such a showing is lacking here. At trial, Kirk's counsel was able to pursue Mortimer's immigration status. Miss Mortimer testified that she was not an American citizen but apparently a citizen of Canada; that she was protected by the amnesty law, whatever that may be; and that marriage to an American prisoner would not have improved her naturalization status. Even if we do not accept Miss Mortimer's testimony at face value, and no reason is given for not doing so, nothing in the record points to anything irregular about her status as an alien, so the documents sought have not been shown to be material to Kirk's defense.
 
 
 9
 Kirk challenges the district court's denial of his motion to dismiss the indictment on speedy trial grounds. Kirk violated his parole and became a fugitive shortly after his release from prison in March 1986. Kirk was arrested in July 1986 for failure to report. On February 16, 1988, Kirk was indicted for his fraudulent dealings with Miss Mortimer. 18 U.S.C. Sec. 3161(b) requires that any "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." (Emphasis added). Kirk challenges his indictment on the grounds that it occurred more than thirty days after his arrest. The difficulty with his position is that "[s]ection 3162(a)(1), which specifies dismissal as the sanction for excessive preindictment delay, requires not only that the defendant be arrested, but that the arrest be based on a charge that is contained in a complaint filed against the defendant." United States v. Ray, 768 F.2d 991, 996 (8th Cir.1985). See also United States v. Sairafi, 801 F.2d 691 (4th Cir.1984). Here, Kirk's arrest was for a parole violation, not for events surrounding his transactions with Miss Mortimer. The Speedy Trial Act, therefore, does not apply.
 
 
 10
 Kirk also challenges the district court's discretion in allowing the prosecution to question Kirk about personal relationships with women other than Miss Mortimer on cross examination, claiming a violation of Federal Rule of Evidence 404(b). Fed.R.Evid. 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." On cross examination, the prosecution pursued questioning about Kirk's relationship with two other women. The prosecution asked about Kirk's relationship with Mona E. Maginen. Kirk claimed to the parole board in February 1985 that Miss Maginen was his common law wife. The prosecution also asked about Kirk's relationship with Lynn Cornelius, whom Kirk claimed to the parole board was his fiancee. Kirk was introduced to Miss Cornelius through the same advertisement that led to his relationship to Miss Mortimer. Kirk had apparently convinced Miss Cornelius to send him money by telling her that his life was in danger if he did not pay back a loan he owed. Kirk claimed on direct examination that he never intended to mislead Miss Mortimer in an attempt to defraud her. The district court did not abuse its discretion in allowing evidence of Kirk's relationship with Miss Maginen and Miss Cornelius since the evidence was probative as to Kirk's intent. It was also relevant to explain "the context of the crime" and to have a "full presentation of the case." United States v. Masters, 622 F.2d 83, 86 (4th Cir.1980).
 
 The judgment of conviction is accordingly
 
 11
 AFFIRMED.